UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR DALFIO, an individual,<br><br>           Plaintiff,<br><br>v.<br><br>J.G. MGMT PROPERTIES IV, LLC, a California limited liability company; MZM FOODS, INC., a California corporation; and DOES 1-10,<br><br>           Defendants. | Case No.: 21-CV-0652-GPC-RBB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MZM FOODS, INC.'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1)**<br><br>[ECF No. 13] |

On March 30, 2022, Defendant MZM Foods, Inc. ("Defendant" or "MZM") filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), on the grounds that this Court lacks subject matter jurisdiction over Plaintiff's claim. ECF No. 13. Further, the motion seeks an order declining to exercise supplemental jurisdiction over the Unruh Civil Rights Act claim presented by the Plaintiff. The parties have fully briefed the matter. ECF Nos. 15, 16. The Court GRANTS in part and DENIES in part MZM's motion to dismiss, GRANTS MZM's motion to decline supplemental jurisdiction over the Unruh state claim, and GRANTS Dalfio's motion for leave to amend the FAC.

1

## I. BACKGROUND

### A. First Amended Complaint (FAC)

The FAC alleges violations of the Americans with Disabilities Act, 41 U.S.C. § 12181, *et seq.* ("ADA") and the California Unruh Civil Rights Act, Cal. Civ. Code § 51, et seq. ("Unruh Act"). ECF No. 10 ("FAC"). Plaintiff Victor Dalfio ("Plaintiff" or "Dalfio") has had two hip replacements and as a result, has difficulty walking and standing, and requires a cane or walker. *Id.* ¶ 1. Dalfio asserts that he is a disabled person under the ADA and the Unruh Act. *Id.* According to Dalfio, MZM owns the real property located at 1905-1915 Garnet Avenue, San Diego, CA 921209 (the "Property"), which operates as "Jack in the Box" (the "Business"). *Id.* ¶¶ 2-4. Dalfio states that the Property is newly constructed or otherwise underwent remodeling or repairs after January 26, 1992, yet fails to comply with California access standards, which were in effect at the time of construction. *Id.* ¶ 13.

### B. Factual Background

Dalfio alleges that he visited the Property on two separate occasions in October 2020 and March 2021 with the intent to patronize the business. *Id.* ¶ 13. However, Dalfio claims he was unable to do so because MZM "did not offer persons with disabilities with equivalent facilities, privileges, and advantages offered by Defendant[] to other patrons." *Id.* ¶ 15. Thus, Dalfio alleges twenty-one (21) separate violations of the ADA and the California Building Code. *Id.* ¶ 21. These allegations include violations regarding inadequate routes of travel to and from entrances on the Property and accessible parking spaces [ECF No. 10 at 5-6, 8], missing signage [*id.* at 7, 8, 12, 13], uneven, abrupt, or excessive changes in level or slope on ground surfaces, parking spaces, and access aisles [*id.* at 9-10, 14, 15, 16, 18], inadequate width of parking spaces, aisles, and ramps [*id.* at 11, 16] and an inadequate front door closing mechanism [*id.* at 19].

Case 3:21-cv-00652-GPC-RBB   Document 20   Filed 06/09/22   PageID.408   Page 3 of 16

On March 30, 2022, MZM contracted with a third-party California state Certified Access Specialist, Craig Lobnow, to confirm whether the Property complied with current federal ADA and state standards. ECF No. 13-1 at 10-11. Lobnow has over 25 years of construction management and inspection experience and is the principal consultant for ProCASp. ECF No. 13-2, Declaration of Craig Lobnow ("Lobnow Decl.") ¶ 2. Lobnow's declaration explains that, after he reviewed Dalfio's FAC, he conducted an inspection of MZM's Property, which he detailed in his final report. *Id.* ¶ 3-4; *see also* ECF No. 13-3, Lobnow CASp Report – March 30, 2022 ("Lobnow Report"). Lobnow's report provides written analysis and photographs of each of the violations alleged in Dalfio's FAC. *See* Lobnow Decl.; Lobnow Report. Lobnow's report goes into great detail for each violation alleged in Dalfio's FAC and provides photographic evidence to contradict each of Dalfio's allegations. *See*, *e.g.*, *id.* at 18-22 (providing photographs showing a marked and accessible route from the access aisle to the curb ramp compliant with relevant standards); *id.* at 23-24 (providing photographs of clearly placed tow-away signs in compliance with relevant standards); *id.* at 25-26 (providing photographs of "minimum fine $250" signage at the designated disabled parking space); *id.* at 27-46 (providing photographs with measurements showing accessible routes to the Property's entrance without slopes in excess of 2%). For example, Dalfio's FAC alleges that the Property does not have an accessible route of travel to all entrances. ECF No. 10 at 5-6. Lobnow's report provides multiple photographs demonstrating that the Property's entrance is compliant with the ADA and California's Business Code ("CBC"). ECF No. 13-3 at 3-17.

Ultimately, Lobnow's report concluded that "the Property targeted by Plaintiff's Amended Complaint are compliant under the current federal and applicable state standards." Lobnow Decl. ¶ 4-5, 7. MZM argues that because all the alleged barriers have been remedied, the case is moot and must be dismissed for lack of subject matter jurisdiction.

In response, Dalfio submits a declaration from Marc Friedlander, an investigator who was hired by The Law Office of Hakimi & Shahriari. ECF No. 15-1, Declaration of Marc Friedlander ("Friedlander Decl.") ¶ 1. Friedlander explains that he inspected the Property on April 7, 2022, took photographs and/or measurements of various remaining violations, and provided a summary of his findings to Dalfio. *Id.* ¶ 2; *see also* ECF Nos. 15-2, 15-3, 15-4, 15-5, 15-6. Friedlander states that five violations remain on the Property, including "cross slopes in the route/path of travel [] that exceed two percent (2%)", "changes in level in the route/path of travel [] greater than one-half inch (1/2")", and that the "front door entrance threshold and weather strip [] have changes in level greater than one-half inch (1/2")." ECF No. 15 at 7. Dalfio argues that because these violations have not been remedied, his claims are not mooted and the case should not be dismissed.

On reply, MZM submitted a supplemental report from its CASp inspector, Craig Lobnow. ECF No. 16-1, Supplemental Declaration of Craig Lobnow ("Lobnow Supp. Decl."); *see also* Lobnow CASp Report – April 20, 2022 ("Lobnow Supp. Report"). Lobnow's supplemental report addresses each issue raised in Dalfio's response and represents that these concerns have also been remedied. *See* Lobnow Supp. Report. Lobnow states that on his return to the Property on April 20, 2022, he "took measurements and, where indicated, work was done to level the points that were claimed to exceed 2.0% [] so that the resulting measurements demonstrated compliance with applicable accessibility standards. Lobnow Supp. Decl. ¶ 4. For example, Dalfio provided photographs showing that the path of travel between the accessible parking and the walkway exceeded 2.0% in certain places. ECF No. 15-2. In turn, Defendant machined those same areas down to reduce the slope to 2.0% or less and provided photographs with new measurements of the path of travel's slope. ECF No. 16-2 at 3-10. Likewise, MZM machined down other areas of the Property to address Dalfio's allegations that the slopes

and cross slopes in the designated disabled parking space exceeded 2.0% and that the surface slopes in the loading and unloading access aisle exceeded 2.0%. *See* ECF Nos. 15-5; 15-6; 16-2 at 18-35.

MZM's report also provides evidence contradicting the photographs and measurements for the remaining two violations alleged in Dalfio's response. In fact, Lobnow testified that "the methods of measurement and documenting of the property conditions by [Dalfio's investigator] [] violate fundamental practices related to accessibility inspections." *Id.* ¶ 6. For example, Dalfio provides photographs and measurements suggesting that there are changes in level in the route of travel that exceed one-half inch. ECF Nos. 15 at 7; 15-3 at 2. However, MZM argues that Dalfio's evidence is misleading and does not actually measure the slope of the route of travel, but instead depicts the placement of a tape measure within a crack in the pavement. ECF No. 16-1 at 3. *Compare* ECF No. 15-3 at 2 *with* ECF No. 16-2 at 11-15. Similarly, Dalfio alleges that the weather strip at the entrance of MZM's Business has a change in level greater than one-half inch. ECF No. 15 at 7. However, the evidence provided by Dalfio is similarly challenged by Lobnow. According to Lobnow, Dalfio's photograph is positioned to suggest a change in level; however, the photographs and evidence provided by MZM's inspector show that no such change in level exists. *Compare* ECF No. 15-4 *with* ECF No. 16-2 at 16-17.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows for dismissal of a complaint for lack of subject matter jurisdiction. "[F]ederal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978. "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citing *Cal. Ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979)).

Subject matter jurisdiction must exist when the action is commenced. *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988) (citing *Mollan v. Torrance*, 22 U.S. 9 Wheat. 537, 538 (1824)). Further, subject matter jurisdiction may be raised "at any stage of the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

A Rule 12(b)(1) jurisdictional attack may be "facial" or "factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted). A facial attack asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A factual attack raises a challenge to the truth of the factual basis upon which federal jurisdiction is predicated. *Id.*

When evaluating a factual attack on jurisdiction, a district court may review evidence beyond the pleadings without converting the motion to dismiss into a motion for summary judgment. *Id.* (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.*

However, jurisdictional dismissals in cases premised on federal question jurisdiction are exceptions rather than the rule, and must satisfy the standard set out by the Supreme Court in *Bell v. Hood*: that jurisdictional dismissals are warranted "where the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682-83 (1946). The Ninth Circuit has held that "a jurisdictional finding of genuinely disputed facts is inappropriate when the

jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Safe Air*, 373 F.3d at 1039 (citing *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983)). "The question of jurisdiction and the merits of an action are intertwined where a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." *Id.*

## III. DISCUSSION

Based on twenty-one alleged accommodation deficiencies, Dalfio brings two causes of action: (1) violation of the ADA; and (2) violation of the Unruh Act. ECF No. 10 at 21-26. MZM argues this case should be dismissed for lack of standing, and that the ADA claim is moot. MZM also asserts the Court should decline to exercise supplemental jurisdiction over Dalfio's state law claim. Dalfio contends that if the Court grants MZM's motion to dismiss that he be allowed to amend his FAC pursuant to Federal Rule of Civil Procedure 15(a)(2).

### A. Standing

"[T]o invoke the jurisdiction of the federal courts, a disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of the litigation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). "Under the oft-repeated standing formulation, [the plaintiff] must demonstrate that he has suffered an injury-in-fact, that the injury is traceable to the [defendant's] actions, and that the injury can be redressed by a favorable decision." *Id.* "In addition, to establish standing to pursue injunctive relief, which is the only relief available to private plaintiffs under the ADA, [the plaintiff] must demonstrate a 'real and immediate threat of repeated injury' in the future." *Id.* (quoting *Fortuyne v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)). An ADA plaintiff can meet this requirement "either by demonstrating deterrence, or by

demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility." *Id.* at 944. As noted in *Chapman*, a disabled person can establish Article III standing to pursue injunctive relief by showing "he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability here." *Id.*

MZM argues Dalfio's allegations are insufficient to show injury because "Plaintiff makes no attempt to explain how those conditions affected his ability to 'visit' the property, [] whether in the parking lot or other portions of the targeted property not just once but multiple times." ECF No. 13-1 at 18. Dalfio provides examples throughout his FAC explaining how each of the alleged barriers affect his ability to patronize MZM's business. *See*, *e.g.*, FAC at 5-6 (explaining how the absence of an exterior travel route makes it difficult and dangerous for Plaintiff to safely and fully access the premises); *id.* at 9-10 (explaining how uneven ground surfaces exceeding certain standards affect Dalfio's ability to fully access the premises). Contrary to MZM's argument, Dalfio's allegations are sufficient to establish injury for the purpose of standing.

### B. Mootness

MZM's second argument in support of its motion to dismiss is that Dalfio's ADA claim is moot because the violations alleged in the FAC have been remedied. "'Mootness is a jurisdictional issue, and federal courts have no jurisdiction to hear a case that is moot.'" *Johnson v. Oishi*, 362 F.Supp.3d 843, 848 (E.D. Cal. 2019) (quoting *Foster*, 347 F.3d at 745). "A claim is moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Id.* (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). In ADA cases, in particular, "because a plaintiff can only obtain injunctive relief under the ADA, the defendant's voluntary cessation of an ADA violation may effectively moot a plaintiff's ADA claim." *Id.* (citing *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011)).

"The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2015) (quoting *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). But voluntary cessation can yield mootness if a "stringent" standard is met: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). The party asserting mootness bears a "heavy burden" in meeting this standard. *Id.*

To determine whether a danger of future violations warrants an injunction in an ADA lawsuit, courts consider "the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations." *Watanabe v. Home Depot USA, Inc.*, No. CV-02-5088-RGK, 2003 WL 24272650, at *4 (C.D. Cal. July 14, 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Courts are more likely to find a matter moot on the basis of a voluntary cessation where the defendant remedies a "structural modification." *Zaldivar v. City of San Diego*, No. 15-CV-67-GPC, 2016 WL 5118534, at *10 (S.D. Cal. Sept. 21, 2016). Such modifications are limited to physical alterations to the property at issue. *See*, *e.g.*, *Lopez v. AND Grp. Corp.*, No. CV 18-4855-PSG, 2019 WL 6434493, at *3 (C.D. Cal. July 30, 2019) (the re-grading and re-painting a parking lot); *Sharp v. Rosa Mexicano*, D.C., LLC, 496 F. Supp. 2d 93, 98 (D.D.C. 2007) (the installation of a wheelchair accessible sink); *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1130 (C.D. Cal. 2005) (the installation of grab bars).

Dalfio first contends that it would be an error to allow MZM "to introduce extrinsic evidence regarding the [] non-existence of access barriers at the motion to dismiss stage." ECF No. 15 at 5-6 (citing *Acevedo v. C & S Plaza Ltd. Liab. Co.*, No. 20-56318, 2021 WL 4938124, at *2 (9th Cir. 2021) (quotations omitted). However, the facts of *Acevedo* do not

support this proposition. In *Acevedo*, the plaintiff's FAC alleged that multiple aisles in the defendant's store were so "cramped, narrow and stocked with items" that her ability to navigate throughout the store was limited, in violation of the ADA. *Acevedo*, 2021 WL 4938124 at *2. Defendant moved to dismiss for lack of subject matter jurisdiction on the grounds that its store aisles had been ADA complaint since 1998, and as such, did not violate the ADA. *Acevedo*, No. 20-56318, 2021 WL 4938124, at *2 (9th Cir. 2021). The Ninth Circuit held that the district court erred because "[a] reasonable fact finder could conclude [] notwithstanding [defendant's] photo's, and inspector's opinion, that the aisle widths at the store do in fact violate the ADA, or that the alleged violations, *if currently remedied, are likely to recur in the future*." *Id.* at 2. (emphasis added). The Ninth Circuit concluded that extrinsic evidence of cleaning the overstocked and overcrowded aisles did not make it absolutely clear that the alleged wrongful behavior could not be reasonably expected to recur. *See Friends of the Earth*, 528 U.S. at 189.

Here, the violations alleged by Dalfio do not have such transient remedies. *See*, *e.g.*, ECF No. 10 at 8 (missing signage); *id.* at 9 (cross slopes greater than two percent); *id.* at 11 (width of designated disabled parking spaces); *id.* at 12 (inadequate parking space ground surface signage). As such, the Court can consider the extrinsic evidence presented by MZM in its motion to dismiss. *Compare Langer v. Nenow*, No. 18-cv-01670-GPC-BGS, 2020 WL 708144, (S.D. Cal. Feb. 12, 2020) (finding a defendant's construction of a second, van-accessible, ADA-compliant parking stall sufficiently moots plaintiff's ADA cause of action) *with Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 860 (N.D. Cal. 2011) (finding the adoption of policies that could be rescinded at any time insufficient to moot a plaintiff's ADA claim); *and Marquez v. Western Inv. Corp.*, 8:20-cv-0726-JLS-DFM, 2020 WL 6595206, at *3 (C.D. Cal. Sept. 28, 2020) (finding that "[m]erely denying everyone access to [a] night check-in window is not the type of permanent, structural changes that would support a finding of mootness at [the motion to dismiss stage]").

The evidence provided by MZM clearly shows that most of the alleged violations on the Property have been remedied. Though unsuccessful at first, MZM tried to resolve the violations alleged in Dalfio's FAC within approximately thirty days of the FAC's filing date. *See* ECF Nos. 10 & 13. Additionally, the initial and supplemental report prepared by MZM's third-party California state Certified Access Specialist, Craig Lobnow, indicates that MZM has remedied all the violations alleged in Dalfio's FAC. *Friends of the Earth*, 528 U.S. at 189. Dalfio contends that MZM failed to remedy all of the violations alleged in the FAC. However, Dalfio presents no evidence or argument regarding sixteen of the twenty-one violations that MZM purports to have remedied. ECF No. 15 at 6-7. In fact, Dalfio only raises issue with five of Lobnow's findings. *Id.* In reply, MZM conducted further remedial measures addressing Dalfio's concern as to three of the five issues Dalfio raised in his opposition. ECF No. 16 at 5-10. The remaining two violations in contention include (1) changes in level in the route of travel that exceed one-half inch [ECF No. 10 at 9]; and (2) that the weather strip at the entrance of MZM's Business has a change in level greater than one-half inch [*id.* at 16]. In light of the photographs and evidence provided by both parties, the Court remains skeptical of Dalfio's remaining two allegations. However, on these two disputed allegations, because it appears that the merits of the action are intertwined with the jurisdictional issue of mootness and jurisdictional findings would be inappropriate under *Safe Air* and *Sun Valley*. Based on this evidence, the Court finds that MZM's efforts have cured all but two of the alleged ADA violations. Accordingly, the Motion to Dismiss is GRANTED as to 19 of the 21 allegations that are moot and DENIED as the two remaining allegations identified above.

### C. Supplemental Jurisdiction

Here, the second cause of action is an Unruh state claim that does not present a federal question and is included as a pendent claim. *See Wanger v. Kaus*, 304 F. 3d 856, 858 (9th 2002) ("state law cause of action claim does not "arise under federal law" even

though it is premised on a violation of federal law." Defendant seeks an order declining supplemental jurisdiction over the state under the view that there exist compelling reasons to do so.

Under 28 U.S.C. § 1367(c), a court can decline to assert supplemental jurisdiction over a pendant claim if one of the following four categories applies: (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. Underlying the § 1367(c) inquiry are consideration of judicial economy, convenience and fairness to litigants, and comity. "[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-27 (1966).

The ADA and the Unruh Act have significantly different pleading requirements and remedies. The Unruh Act allows plaintiffs both injunctive relief and monetary damages. *See* Cal. Civ. Code §§ 52, 55.56. It permits an award of attorney's fees and a $4,000 mandatory minimum for "each particular occasion that the plaintiff was denied full and equal access." *Id.* Meanwhile, under the ADA, monetary damages are not available and only injunctive relief is available. 42 U.S.C. § 12188(a)(2); *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) (ADA is a purely injunctive statute that does not permit an award of monetary damages).

In his FAC containing twenty-one alleged violations, Dalfio seeks $84,000 in statutory damages and injunctive relief under the Unruh Act. This alone is enough to find that Dalfio's monetary damages substantially predominate. *See*, *e.g.*, *Molski v. EOS Estate Winery*, 2005 WL 3952249, at *4 (C.D. Cal. 2005) ("Even though Plaintiffs have submitted

a notice of voluntary limitation of damages, seeking only an award of $4,000 to [plaintiff], it is still clear that the claim for damages is the predominant focus of this lawsuit.").

Finally, "district courts [should] deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997) (citation omitted). The state of California has implemented heightened pleading requirements for litigants filing claims under the Unruh Act. The pleading mandates require litigants to verify their allegations, include the exact dates they encountered alleged violations, and to explain the specific way in which the violations denied them full and equal use. *See* Cal. Civ. Proc. Code § 425.50 (effective January 1, 2013). In 2015, the Unruh Act added procedural requirements for "high-frequency litigants", which required qualifying individuals to pay additional filing fees and plead even more specific information in their complaints. *See* Cal. Civ. Proc. Code § 425.50 (a)(4)(A) (effective October 10, 2015). These unique pleading requirements were imposed in order to "deter baseless claims and vexatious litigation," an issue of particular importance in California because of the unique availability of statutory damages available under the Unruh Act. *See Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017).[1] Given Dalfio has filed at least 37 cases as a plaintiff in this district since April

---

[1] Several district courts have declined to exercise supplemental jurisdiction over Unruh Act claims as a matter of comity and in deference to California's compelling state interests. *See*, *e.g.*, *Schutza*, 262 F. Supp. 3d at 1031 (finding California's substantial interest in discouraging unverified disability discrimination claims to be a compelling reason for declining supplemental jurisdiction over state claims); *see also Marquez v. KBMS Hospitality Corporation*, 492 F. Supp. 3d 1058, 1062 (C.D. Cal. 2020) (declining supplemental jurisdiction over an Unruh Act claim because California "deserves the opportunity to enforce" its detailed statutory scheme regarding damages under the Unruh Act); *Langer v. Kiser*, 516 F. Supp. 3d 1066, 1090 (S.D. Cal. 2021) (finding comity to be a compelling reason for declining supplemental jurisdiction over state claims). Declining

2021, it is clear he is a "high-frequency litigant" and is aware of California's heightened standard and intends to avoid it. The Court finds that comity and deference to California's interest in monitoring and regulating Unruh Act complaints present compelling reasons to decline to exercise supplemental jurisdiction.

The Court declines to extend jurisdiction over Dalfio's state law claim because they substantially predominate over his ADA claim and because there are compelling reasons to decline supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(2).

As such, the Court DECLINES jurisdiction over Dalfio's second cause of action and DISMISSES it.

### D. Opportunity to Amend Under F.R.C.P. 15(a)(2)

Finally, Dalfio requests an opportunity to file a second amended complaint should the Court grant MZM's motion to dismiss. ECF No. 15 at 7. Under Federal Rule of Civil Procedure ("Rule 15"), "[a] party may amend its pleading once as a matter of course … only with the opposing party's written consent or the court's leave," and courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded."). In assessing the propriety of an

---

to exercise supplemental jurisdiction, moreover, is consistent with how courts of this district have addressed comparable situations arising in similar cases. *See*, *e.g.*, *Dalfio v. Cuatro Caballeros LLC*, No. 21-cv-672-MMA (AGS), 2021 WL 5178595, at *2-4 (S.D. Cal. Nov. 8, 2021); *Dalfio v. Simco-Robinson, LLC*, No. 21-cv-647-MMA (DEB), 2021 WL 5178525 (S.D. Cal. Nov. 8, 2021); *Dalfio v. Assef*, No. 21-cv-1696-CAB-RBB, 2021 WL 4480639, at *1-2 (S.D. Cal. Sept. 30, 2021); *Dalfio v. SECVD & I, Inc.*, No. 21-cv-929-MMA (AGS), 2021 WL 4197203, at *2-3 (S.D. Cal. Sept. 15, 2021); *Dalfio v. P.I.D. University, Inc.*, No. 21cv911-CAB-JLB, 2021 WL 1923180, at *1-2 (S.D. Cal. May 13, 2021).

amendment, courts consider several factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendments previously permitted; (4) prejudice to the opposing party; and (5) futility of amendment. *Foman*, 371 U.S. at 182; *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). These factors do not carry equal weight; the possibility of delay alone, for instance, cannot justify denial of leave to amend, *DCD Programs, Ltd. V. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987), but when combined with a showing of prejudice, bad faith, or futility of amendment, leave to amend will likely be denied. *Bowles v. Reade*, 198 F.2d 752, 758 (9th Cir. 1999). The single most important factor is whether prejudice would result to the non-movant as a consequence of the amendment. *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 668 F.2d 1014, 1053 (9th Cir. 1981). The burden of demonstrating prejudice falls on the party opposing leave to amend. *DCD Programs, Ltd.*, 833 F.2d at 187.

Dalfio makes no specific argument why the Court should allow him to file a Second Amended Complaint, nor does MZM make any argument why the Court should not allow it. However, only two of the twenty-one alleged violations listed in Dalfio's FAC appear to have potentially violated the ADA—and only minimally at best. The report provided by MZM's inspector clearly shows that most of the alleged violations were either remedied within one month's time or never existed. Further, the photographs provided by Dalfio in his opposition to MZM's motion to dismiss appear questionable. *See*, *e.g.*, ECF Nos. 15-3, 15-4 at 2. Given that the Defendant has not opposed the motion to amend the ADA claim, the Court GRANTS leave to amend the first cause of action. However, leave is DENIED as to the supplemental state cause of action because amendment would be futile.

### IV. CONCLUSION

In light of the foregoing reasons, the Court GRANTS in part and DENIES in part MZM's motion to dismiss. All of Dalfio's alleged ADA violations are DISMISSED as MOOT except for the two listed above. *See supra* III.B at 11-12. The Court GRANTS

MZM's motion to decline supplemental jurisdiction over the Unruh Civil Rights Act and this state claim is DISMISSED WITHOUT PREJUICE to refiling in state court. The Court GRANTS Dalfio's motion for leave to amend the ADA claim. Dalfio may file an amended complaint on the ADA claim or before June 30, 2022.

**IT IS SO ORDERED.**

Dated: June 9, 2022

_____
Hon. Gonzalo P. Curiel
United States District Judge